## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **CHARLES W. CUNNNGHAM, JR.,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **vs.** | : | **CIVIL ACTION 15-494-KD-N** |
| | : | |
| **GLORIA MCCLAIN, *et al.*,** | : | |
| **Defendants.** | : | |
| | : | |

### Report and Recommendation

Plaintiff Charles William Cunningham, Jr., an Alabama prison inmate proceeding *pro se* and *in forma pauperis*, filed a complaint under 42 U.S.C. § 1983. This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72(a)(2)(R), and is now before the undersigned on the motion for summary judgment of Defendants Dr. George Kouns, Dr. Hugh Hood, Dr. Karen Stone, Nurse Nykeiliya Jackson, Nurse Cindy Johnson, and Nurse Ashley Wall. (Docs. 43, 44, 47, 48). After careful review of the pleadings, and for the reasons set out below, it is recommended that Defendants' Motion for Summary Judgment be **granted**, and Plaintiff Cunningham's federal claims be **dismissed** with prejudice.

Additionally, Plaintiff Cunningham's motion to appoint counsel (Doc. 60) is hereby **denied** as moot. And, **Plaintiff is hereby placed on Notice** by the filing of this Report and Recommendation of the Court's intention to

recommend the granting of summary judgment for Defendant Gloria McClain, pursuant to Fed. R. Civ. P. 56(f)(3).

## I.    Summary of Allegations and Background.

From its review of the record, the court summarizes the parties' allegations that are material to the issued addressed in the Report and Recommendation.

Plaintiff suffers from polycystic kidney disease, a genetic disorder in which clusters of cysts develop primarily in the kidneys.  (Doc. 48-1 at 5; Mayo Clinic, Polcistic kidney disease, http://www.mayoclinic.org/diseases-conditions/polycystic-kidney-disease/basics/definition/con-20028831)     (last visited March 20, 2017)).   The disease "has no cure, and is treated by reducing symptoms" which include high blood pressure, urinary tract or kidney infections, kidney stones, and temporary or persistent pain in the back, sides, and between the ribs and hips.  (*Id*.).  Cunningham has been also been diagnosed with Benign Prostatic Hyperplasia ("BPH"), enlargement of the prostate, and has been receiving treatment by Defendants for both polycystic kidney disease and BPH since 2014.  (Doc. 48-1 at 6; Doc. 44-1 at 10).

Cunningham alleges that the defendants failed to provide him adequate medical treatment and delayed medical treatment in violation of the Eighth Amendment.  (Doc. 30 at 3-8).  Specifically, he asserts Dr. Kouns, Dr. Hood and Nurse McClain delayed his receipt of a cystoscopy, causing

prostate enlargement and kidney cysts, and that Dr. Kouns and Nurse McClain failed to treat him during the month of April 2015 following his appointment with the specialist.  (Doc. 30 at 4-6).  Additionally, he brings claims against Dr. Stone for delaying treatment of his urinary problems and kidney cysts in February 2016, and against Nurses Walls, Jackson, and Johnson for denying and delaying medical treatment in February 2016, through sick call screening.[1] (*Id.* at 6-8, 10).  Plaintiff further asserts that as of December 2016 the defendants have not referred him back to a specialist for treatment and have discontinued the pain medication prescribed by the urologist, Dr. Newman in violation of the Eighth Amendment.  (Doc. 59 at 11).

Although Plaintiff Cunningham quantifies his claims as occurring during specific time periods, namely April 2015 and February 2016, the undersigned finds a condensed chronological review of Cunningham's medical history is necessary for analyzing his asserted claims.

Cunningham began complaining of urinary difficulties and pain associated with his kidneys in early 2014.  (Doc. 44-1 at 11).  His symptoms were assessed as polycystic kidney disease and the Holman medical staff began treating Cunningham accordingly, monitoring and controlling his blood pressure, routinely checking his kidney function and providing

---

[1]  Cunningham asserts that Defendant Nurses Jackson, Johnson, and Walls denied him to be seen by a doctor with the explanation that Cunningham was scheduled to return to the specialist – when in actuality there was no scheduled appointment. (*Id.* at 6-8, 10).

urinalysis screenings, and implementing dietary changes. (*Id*. at 15). Cunningham was also referred to a urologist, Dr. Newman regarding his medical condition. Dr. Newman first evaluated Cunningham on October 28, 2014, and confirmed the diagnosis of polycystic kidney disease, but did not order and changes to the course of treatment set out by Defendants. (Doc. 44-1 at 30-32). Specifically, Dr. Newman, recommended managing Plaintiff's case by diet alone, prescribed no new medication, accessed Cunningham's complained of back pain as being musculoskeletal rather than kidney related, and further indicated that no follow up was needed. (*Id*. at 32-33).

Over the next four months, Cunningham was examined no less than five times by the medical staff at Holman, received at least three urinalysis tests to monitor his kidney function, and was provided two catheterizations to relieve urination difficulties. (*See id*. at 34-53).

Cunningham was again referred to Dr. Newman on April 14, 2015, and the specialist recommended that Cunningham: (1) receive a "bilateral renal ultrasound soon;" (2) be scheduled for "an outpatient cystoscopy soon at Jackson Hospital" to determine if a urethral stricture was the cause of Cunningham's voiding difficulty, and (3) continue his current medication, Hytrin.[2] (*Id*. at 56, 78, 95). Upon returning to Holman, the transporting

---

[2] Hytrin or Terazosin is medication used to treat urinary retention, caused by benign prostatic hyperplasia (prostate gland enlargement) and high blood pressure. The medication relaxes the prostate and bladder neck making it easier to urinate; it also relaxes the veins and arteries so that blood can pass

officer, delivered the recommendations and scheduling information for the procedures to an unknown medical staff member at the prison.  (*Id*.).

The recommended ultrasound was immediately requested by Dr. Kouns and approved by Dr. Hood (*Id*. at 57), and the results showed:

> Multiple bilateral renal cyst.  No obstruction or calculus detected.  There is evidence of medical renal disease.  Findings are similar to the prior study [conducted on August 15, 2014.][3]

(*Id*. at 60).  The cystoscopy[4] was requested by Dr. Kouns on October 15, 2015, quickly approved by Dr. Hood, and scheduled for December 10, 2015.  (*Id*. at 71).  The results of the cystoscopy were noted by Dr. Newman as follows:

> 12/10/2015 at Jackson as outpatient did cysto to reveal mild early bph but no recurrent urethral stricture . . . . . continue hytrin 5m for now and see me in 3 to 4 months.

(*Id*. at 74).

Following the cystoscopy, Cunningham began making frequent requests for stronger pain medication and to be seen by a doctor.  On December 16, 2015, through a standard sick call request, Cunningham asserted that he had twice informed Nurse Walls of his need to see the doctor, but Nurse Walls stated, "she forgot etc. etc." (Doc. 44-1 at 75).

---

more easily through them.  Drugs.com, https://www.drugs.com/terazosin.html (last visited March 16, 2017).

[3] The renal ultrasound conducted on August 15, 2014 revealed: "Enlarged kidneys with multiple bilateral renal cysts, consistent with polycystic kidney disease."  (Doc. 44-1 at 24).  Additionally, the caparison of kidney and cyst measurements between the two scans are unremarkable.  (*Id*. at 24, 60)

[4] A cystoscopy is a procedure that allows a urologist to view the inside of the bladder and urethra.  (Doc. 48-1 at 5).

Cunningham claims he filed two more requests to see a doctor that were denied by Nurses Jackson and Walls because they stated Cunningham "was scheduled to go back-out for treatment in Montgomery per MD doctor Mr. Kouns." (Doc. 30 at 7).   Defendants assert, however, that Cunningham received adequate medical care, as he was evaluated by the nursing staff on January 6 and 14, 2016 (Doc. 44-1 at 76-77) before filing a grievance on January 23, 2016 (complaining of pain and requesting "muscle relaxers or something very strong" for pain relief until his appointment). (Doc. 59-1 at 4-6).   Nurse Johnson promptly responded to the grievance, stating:

> Mr. Cunningham, I have received your request, and I have reviewed your medical record.  I have also reviewed the consult note from Dr. Newman concerning the results of your cystoscopy. In his note Dr. Newman states that you have early, mild enlargement of your prostate.  He recommends that we continue the Hytrin and see you in a few months.  You are currently on Hytrin and we are continuing to follow you on a regular basis.  I am not sure what is causing your pain.  I have discussed this issue with Dr. Hood, the statewide medical director, and he does not feel that this is the cause of your pain. I note in your chart where you have signed up for sick call several times and then refused.  I also note that you are down for sick call today. I have asked the nurse in the back to go ahead and call for you and to let me know when you arrive so that I may come to the back and talk with you.  I hope you feel better soon.  If you have any further issues please let me know. Please let me know if you have any questions or concerns. Thank you.

(Doc. 59-1 at 3).   Holman physician Dr. Stone examined Cunningham for his complaints of kidney pain on January 26, 2016 and ordered a complete blood work up for review and for Cunningham to return in one week for a follow up appointment.  (Doc. 44-1 at 79).

On February 4, 2016, Cunningham was again evaluated for his kidney and pain complaints by the nursing staff and Tylenol was prescribed for pain relief. (*Id*. at 83). On February 15, 2015, Cunningham filed a ranting grievance regarding his pain and need for examination. (Doc. 59-1 at 8). Dr. Stone and Nurse Johnson met with Cunningham following the grievance and also penned the following response:

> Mr. Cunningham, I have received your grievance, and I have reviewed your medical. Per our meeting today with you, Dr. Stone and myself, I hope we were able to relieve some of your anxiety regarding your medical condition. As Dr. Stone explained in length to you, there is no treatment for polycystic kidney disease. We can only treat your symptoms and try and keep your kidneys as healthy as possible. This is being done and your kidney function is good at this time. Dr. Stone will continue to monitor your kidney function and she is going to order more testing to try and identify the source of your pain. I hope that you found this meeting helpful and informative. Please let me know if you have any questions or concerns. Thank you.

(Doc. 59-1 at 7; Doc. 44-1 at 87). Dr. Stone subsequently ordered abdominal and pelvic ultrasounds to aid in the diagnosis of Cunningham's complaints of pain. (Doc. 44-1 at 86). The ultrasounds were conducted on February 25, 2016, but the results were unremarkable. (*Id*. at 88-90). Dr. Stone informed Cunningham of the ultrasound findings through a handwritten note, which stated:

> Dear Mr. Cunningham,
>
> I reviewed your US or abdomen report. The kidneys appear the same and the cysts are the same size as in 2015 and 2014. The rest of the ultrasound appears basically OK. There is no problem seen to explain your pain. Continue to protect your

kidneys by avoiding salt, taking prescribed medications, and avoiding meds like ibuprofen, motrin, naproxen and ANY unnecessary meds. We will see you next at your chronic are visit in April.

(Doc. 44-1 at 91). Cunningham has continued to be monitored and his disease managed through the Chronic Disease Clinic at Holman, but he has not returned to a urology specialist since his cystoscopy, which was performed December 10, 2015.

Plaintiff filed this action on September 27, 2015[5] seeking monetary relief against each defendant, jointly and severally, in the amount of $100,000.00 in compensatory damages, $75,000.00 in punitive damages, $20,000.00 in nominal damages, as well as a federal investigation against each defendant. (Doc. 30 at 15). Defendants, Dr. Kouns, Dr. Hood, Dr. Stone, Nurse Jackson, Nurse Johnson, and Nurse Walls, have answered the complaint and filed special reports which have been converted by the court to

---

[5]     Cunningham's petition bore a signature date of September 27, 2015, and was received by the Clerk's Office on October 2, 2015. (Doc. 1). Absent evidence to the contrary, the Court assumes that the petition was delivered to prison authorities for mailing on the day that Cunningham signed it. *See Washington v. U.S.*, 243 F.3d 1299, 1301 (11th Cir. 2001). Under the "mailbox rule," "a prisoner's *pro se* § complaint is deemed filed the date it is delivered to prison authorities for mailing." *Id.*

Plaintiff initially filed this action against defendants claiming deliberate indifference to medical treatment but for multiple injuries arising from difference occurrences. (*See* Docs. 1-3). Upon order of the court (Doc. 25), Plaintiff filed a second amended complaint selecting the single claim under which he wished to proceed in this action. (Doc. 30). This second amended complaint is deemed the operative complaint in this action, and Plaintiff's Third Amended Complaint (Doc. 31) was removed from this case and docketed as a new and separate action, *see* case number 16-180-CB-N. (Doc. 33).

a motion for summary judgment.[6] (Docs. 43, 44, 47, 48, 51). Defendants'
motion for summary judgment, along with Plaintiff's objection thereto (Docs.
56, 59), is now before the court for consideration.[7]

## II.   Standard of Review.

Summary judgment is proper "if the movant shows that there is no
genuine dispute as to any material fact and that the movant is entitled to
judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 247-248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202
(1986) ("The mere existence of some alleged factual dispute between the
parties will not defeat an otherwise properly supported motion for summary
judgment."); *Garczynski v. Bradshaw*, 573 F.3d 1158, 1165 (11th Cir. 2009)

---

[6]   Defendant Nurse Gloria McClain has yet to be served with this action
despite efforts of Plaintiff and the court. (Docs. 36, 45, 49, 50). Thus,
Defendant Nurse McClain is not a party to this motion for summary
judgment. Notably, the allegations against her are identical to those against
Defendants Kouns and Hood, who are parties to this motion.
    Additionally, Defendants Kouns, Hood, Stone, Jackson, Johnson, and
Walls assert various defenses, qualified immunity being one. The Court
notes that, as private actors, the medical Defendants are not entitled to
immunity, whether qualified or absolute. *See Swann v. S. Health Partners,
Inc.*, 388 F.3d 834, 837 (11th Cir. 2004) ("The parties agree that as a private
entity, SHP [a private corporation employed by the County to provide medical
care to inmates at the county jail] is not entitled to assert a qualified
immunity defense."); *Edwards v. Ala. Dep't of Corr.*, 81 F. Supp. 2d 1242,
1254 (M.D. Ala. 2000)(a private entity contracting with a state to provide
medical services to state inmates "is not entitled to qualified immunity....").

[7] Plaintiff has several motions currently pending before the court. As per the
reasoning and recommendation of this report, the court continues to defer its
ruling on Plaintiff's motions related to unserved Defendant Gloria McClain
(Docs. 45, 52, 57) until the time period for objections to this report expires
and denies Plaintiff's motion to appoint counsel (Doc. 60) as moot.

("[S]ummary judgment is appropriate even if 'some alleged factual dispute' between the parties remains, so long as there is 'no genuine issue of material fact.'").

The party seeking summary judgment has the initial responsibility of informing the court of the basis for the motion and of establishing, based upon the discovery instruments outlined in Rule 56(c), that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L.Ed.2d 265 (1986); s*ee also Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007) ("The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). Once this initial demonstration is made, the "responsibility then devolves upon the non-movant to show the existence of a genuine issue . . . [of] material fact." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993); *see also Allen, supra*, at 1314 ("'When a moving party has discharged its burden, the non-moving party must then "go beyond the pleadings," and show by its own affidavits, or by "depositions, answers to interrogatories, and admissions on file," designate specific facts showing that there is a genuine issue for trial.'") internal citations omitted); *see Comer v. City of Palm Bay, Fla.*, 265 F.3d 1186, 1192 (11th Cir. 2001) ("Once the moving party discharges its initial burden of showing that there is an absence of evidence

to support the non-moving party's case, the non-moving party must specify facts proving the existence of a genuine issue of material fact for trial confirmed by affidavits, 'depositions, answers to interrogatories, and admissions on file.'") (internal quotations and citations omitted).

> Forbidding reliance upon pleadings precludes a party from "choos[ing] to wait until trial to develop claims or defenses [*7] relevant to the summary judgment motion." . . . This effectuates the purpose of summary judgment which "'is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" . . . Thus, "mere general allegations which do not reveal detailed and precise facts" will not prevent the award of summary judgment upon a court's determination that no genuine issue for trial exists.

*Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 592 (11th Cir.), *cert. denied sub nom. Jones v. Resolution Trust Corp.*, 516 U.S. 817, 116 S. Ct. 74, 133 L.Ed.2d 33 (1995); *see also LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998) ("[The nonmoving party] must raise 'significant probative evidence' that would be sufficient for a jury to find for that party.").  In other words, there is no genuine issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see Comer*, *supra*, 265 F.3d at 1192 ("Summary judgment is required where the non-moving party's response to a motion is merely 'a repetition of his conclusional allegations' and is unsupported by evidence showing an issue for trial."). evidence showing an issue for trial.").

In considering whether Defendants are entitled to summary judgment in this action, the undersigned has viewed the facts in the light most favorable to Plaintiff Cunningham. *Comer*, *supra*, 265 F.3d at 1192 ("We view the evidence and all factual inferences raised by it in the light most favorable to the non-moving party, and resolve all reasonable doubts about the facts in favor of the non-moving party.").

> The requirement to view the facts in the nonmoving party's favor extends only to "genuine" disputes over material facts. A genuine dispute requires more than "some metaphysical doubt as to the material facts." A "mere scintilla" of evidence is insufficient; the non-moving party must produce substantial evidence in order to defeat a motion for summary judgment.

*Garczynski*, *supra*, 573 F.3d at 1165 (internal citations omitted). In addition, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment." *Resolution Trust Corp.*, *supra*, 43 F.3d at 599.

## III.   Analysis.

The Eighth Amendment provides that, "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. The Eighth Amendment's proscription against cruel and unusual punishment prohibits prison officials from exhibiting deliberate indifference to a substantial risk of serious harm to an inmate. *Farmer v. Brennan*, 511 U.S. 825, 828, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994); *see also Robinson v. California*, 370 U.S. 660, 82 S. Ct. 1417, 8 L. Ed. 2d 758 (1972) (Eighth Amendment is applicable to the states through the

Fourteenth Amendment).   The Supreme Court summarized a state's constitutional responsibilities with regard to inmates stating:

> [W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. . . . The rationale for this principle is simple enough: when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs -- e.g., food, clothing, shelter, medical care, and reasonable safety -- it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200, 109 S. Ct. 998, 103 L. Ed. 2d 249 (1989) (citations omitted).

In this action, Plaintiff Cunningham claims the defendants denied or delayed medical treatment of his chronic kidney conditions.   In order to prevail on his Eighth Amendment claim, he must make both an objective and a subjective showing.  In *Sims v. Mashburn*, 25 F.3d 980 (11th Cir. 1994), the court delineated the objective and subjective portions of an Eighth Amendment claim as follows:

> An Eighth Amendment claim is said to have two components, an objective component, which inquires whether the alleged wrongdoing was objectively harmful enough to establish a constitutional violation, and a subjective component, which inquires whether the officials acted with a sufficiently culpable state of mind.

25 F.3d at 983.  Meaning, Plaintiff must prove that there was "a substantial risk of serious harm," that the defendants were subjectively deliberately indifferent to that risk, and causation.  *Hale*, 50 F.3d at 1582; *see also*

*Farmer*, 511 U.S. at 832-34. In defining "deliberate indifference," the Supreme Court in *Farmer* stated:

> With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness. *See e.g., LaMarca v. Turner*, 995 F.2d 1526, 1535 (CA11 1993).... It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.

*Farmer*, 511 U.S. at 836. That is, did the defendants "act[] with a sufficiently culpable state of mind" in denying or delay medical care." *Sims*, 25 F.3d at 983-84 (citing *Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). The Supreme Court has determined there is no liability for "an official's failure to alleviate a significant risk that he should have perceived but did not . . . ." *Farmer,* 511 U.S. at 838. It is not enough that an inmate proves that the defendant should have known of the risk, but did not, as actual knowledge is the key. *See, e.g., Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996).

Additionally, a "[d]elay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *overruled in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9, 122 S. Ct. 2508, 153 L. Ed. 2d 666 (2002) (internal citations and quotation marks omitted). However, to succeed in proving that

the delay of medical care rose to a constitutional violation, Plaintiff "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed. . . . Consequently, delay in medical treatment must be interpreted in the context of the seriousness of the medical need, deciding whether the delay worsened the medical condition, and considering the reason for delay. *Id*. at 1188-89 (internal citations omitted) (footnotes omitted); *see also, Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1307 (11th Cir. 2009).

1. <u>Claim of Delay in Receiving Cystoscopy.</u>

Following the standard set out above, the undersigned first turns to the objective prong of the analysis. In this case, Defendants do not dispute that Cunningham suffers from a serious medical need. *See Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (A serious medical need is "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'") (quoting *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994). Defendants claim that Plaintiff has received appropriate care for his illness and cannot show deliberate indifference regarding his treatment. Thus, the undersigned will focus her analysis on whether or not Cunningham, as the nonmovant, has carried his burden of establishing the subjective component of his asserted constitutional claim.

There was a significant delay in the receipt of the cystoscopy. However, the mere showing of a delay is not prima facie evidence of deliberate indifference. "The inadvertent or negligent failure to provide adequate medical care 'cannot be said to constitute "an unnecessary and wanton infliction of pain."'" *Farrow*, 320 F.3d at 1243 (quoting *Estelle*, 429 U.S. at 105-06); *see also Minneci v. Pollard*, 565 U.S. 118, 130, 132 S. Ct. 617, 181 L. Ed. 2d 606(2012) ("[T]o show an Eighth Amendment violation a prisoner must typically show that a defendant acted, not just negligently, but with 'deliberate indifference.'")(citing *Farmer v. Brennan*, 511 U.S. 662 (1994)); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996)(stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995)(stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Reg. Youth Det. Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994)(recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence).

The record reveals, and Cunningham does not dispute, that following the April 14, 2015 appointment with the specialist, he did not seek medical attention until September 2015.  (*Id.* at 61-74).  Defendants were not made aware of any medical needs until September 8, 2015, when Cunningham was examined after a sick call request to have his prostate checked; a urinalysis was conducted and an antibiotic, Bactrim, was prescribed when an infection

16

was indicated.  (*Id.* at 62-63).  On September 17, 2015, Cunningham filed a grievance questioning (for the first time), amongst other concerns, why he had not received the cystoscopy ordered by Dr. Newman.  (Doc. 30 at 21). Nurse McClain immediately responded to the grievance by placing Cunningham on the doctor's call list for the day so that Cunningham could "have all [his] issues addressed at that time."[8]  (*Id.*).  On October 15, 2015, Cunningham was examined per a routine chronic disease follow-up and again reminded the staff of the need for the recommended cystoscopy.  (Doc. 44-1 at 64).  Dr. Kouns filed a consultation request for the surgery that same day, which was approved by Dr. Hood on October 27, 2015, and an appointment was scheduled for Dr. Newman to perform the ordered cystoscopy on December 10, 2015. (*Id.* at 71).  Defendants immediately responded to or treated Cunningham upon each request.  Furthermore, the named defendants each acted promptly once made aware that the cystoscopy had not been scheduled.  Consequently, the facts do not suggest that the cystoscopy was delayed intentionally or with the forethought of potential harm to Plaintiff, and Plaintiff puts forth no argument or facts otherwise.

In order for this delay in medical treatment to amount to deliberate indifference, Plaintiff must show that the delay worsened his medical condition, *Goebert v. Lee Cnty.,* 510 F.3d 1312, 1327 (11th Cir. 2007)("In cases

---

[8] The record before the court, however, lacks a copy of the examination report on September 17, 2015; so, it is uncertain whether or not Cunningham was treated on this day.

that turn on the delay in providing medical care, rather than the type of medical care provided...[w]here the prisoner has suffered increased physical injury due to the delay, [the Eleventh Circuit] ha[s] consistently considered: (1) the seriousness of the medical need; (2) whether the delay worsened the medical condition; and (3) the reason for the delay."). Cunningham fails to carry this burden as the record confirms Plaintiff's condition was not affected by the delay.

The cystoscopy confirmed that Cunningham's voiding difficulties were caused by an enlarged prostate, medically termed Benign Prostatic Hyperplasia ("BPH"). (*Id*.). The medical records reveal that Cunningham had been diagnosed with and received treatment for BPH (with a prescribed medication, Hytrin, and Tylenol for pain) since 2014. (*Id*. at 10). Notably, following the cystoscopy, Dr. Newman prescribed no new changes in the treatment plan of Cunningham and simply recommended a follow-up appointment in three to four months. (*Id*. at 74). Consequently, Cunningham has not established, and the record refutes his claim, that Defendants purposely delayed the cystoscopy. Moreover, there is no "verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment." *Mann,* 588 F.3d at 1307. Thus, there are no genuine issues to the facts of record, and the undersigned recommends that summary judgment be granted in favor of Defendants Kouns and Hood and that the claims against them be dismissed.

2. Claim of Denied Medical Treatment in April 2015 through December
2015.

Plaintiff claims in April 2015, Defendants Kouns and McClain denied
him medical evaluations and prescription "medication to relieve the infection
in his urine" despite being in pain and having difficulty urinating. (Doc. 30
at 4; Doc. 59 at 3). As discussed above, to be successful on such a claim,
Plaintiff must show Defendants were subjectively aware of a risk to Plaintiff
and acted with deliberate indifference in denying him medical treatment.
However, Plaintiff fails to establish that Defendants were ever notified of the
allegations of which he complains.

Defendants present evidence that Cunningham requested no
treatment during April 2015. (*See Id*. at 53-62). No sick call requests were
filed during this time, no urinalysis were ordered, and Dr. Newman's April
14, 2015 examination notes do not indicate the presence of any infection, and
no medication is prescribed. (*Id*. at 56). Additionally, Plaintiff does not
refute Defendants' submission. As such, there is no indication that, in April
2015, Defendants were made aware that Cunningham suffered from an
infection and was denied treatment. Thus, there is no genuine issue for trial
"[w]here the record taken as a whole could not lead a rational trier of fact to
find for [Plaintiff.]" *Matsushita Elec. Indus. Co., Ltd,* 475 U.S. at 587.

In his response to the motion for summary judgment, Plaintiff further
claims "that during the course of defendants delay from April 2015 to

December 10, 2015, Plaintiff was straining to urinate, and in serious-sharp-pain and would have a bowel movement within his under-wear and had to receive catheter treatment to make him urinate." (Doc. 59 at 3). The undersigned interprets these allegations as a claim that Cunningham was denied needed medical treatment during the months the cystoscopy was delayed. However, Plaintiff again fails to establish the necessary subjective element of proving a constitutional violation.

First, the record shows Plaintiff never placed a sick call request or notified any Defendant or medical staff member that he suffered from uncontrollable bowel movements, and Plaintiff does not allege that he ever informed anyone. Without actual knowledge of a medical need, Defendants cannot be held liable for a constitutional claim of inadequate medical treatment. *McElligott*, 182 F.3d at 1255 (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner). In other words, a defendant can only be held liable for deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer,* 511 U.S. at 837. Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Id.* at 838.

20

Second, the record belies Cunningham's claim that he required catheterizations in order to urinate during the complained of time period. It is confirmed that Cunningham received catheterizations to aid in urine elimination on December 28, 2014 and February 1, 2015, but not while awaiting the cystoscopy. (*See* Doc. 44-1 at 41, 51). *See Bennett v. Parker*, 898 F.2d 1530, 1533-34 (11th Cir. 1990)(Where a plaintiff submits a "conclusory allegation, unsupported by any physical evidence, medical records, or corroborating testimony of witnesses . . . [the court] discount[s] it", and it is insufficient to defeat a motion for summary judgment.); *see also Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686(2007)("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Finally, it appears that Cunningham claims that he was denied effective pain medication during April through December 2015. The medical notes show that Defendants were aware of Cunningham's desire for stronger pain medication through three sick call requests during the complained of period - November 10, 2015 (general kidney pain); November 20, 2015 (stated, "I am hurting" and requested a different pain medication); December 8, 2015 (stated, "I be in pain all the time medication that what I been proscribed aren't working its getting worse, need to see doctor again please

my pain between 1 thru 10 its past 10 ten…) - but did not alter the prescribed medication.  (*Id.* at 68-70).  Defendants maintain that despite the refusal to prescribe a different pain medication, Cunningham received sufficient medical treatment while he awaited the cystoscopy, from September through December 2015, as he received Tylenol to alleviate his discomfort, antibiotics for infections, and all sick call requests were responded to promptly.[9]  (*Id.* at 57, 63).  Defendants' refusal to give Cunningham stronger pain medication

---

[9]     Five requests related to this matter were filed by Plaintiff for some sort of treatment between the time the cystoscopy was scheduled and performed: October 27, November 4, 10, 20 and December 8, 2015. (Doc. 48-1 at 65-66, 68-70).

On October 27, 2015, Nurse Jackson evaluated Cunningham for complaints of straining to urinate, and a urinalysis was ordered.  (*Id.* at 65). (The undersigned notes that there is no documentation of record regarding the results of the ordered urinalysis; however, there is also no further request for the test in the record, and Plaintiff does not dispute that it was performed.).

On November 4, 2015, Cunningham was evaluated for complaints of chest pain and an EKG was performed.  (*Id.* at 66).

On November 10, 2015, Cunningham requested to see a doctor for complaints of a hand fracture and kidney pain and was scheduled to see a nurse at sick call.  (*Id.* at 68).

Cunningham was examined by the doctor on December 4, 2015. (*Id.* at 70). (A handwritten notation in response to Plaintiff's December 8, 2015 sick call request states, "seen by MD on 12-4-15."  (Doc. 44-1 at 70).  While Dr. Kouns' exam notes are not included in the parties' submission in this action, an examination note for December 4, 2015 does appear in the record of Plaintiff's associated case number 16-180-CG-N, currently pending before this court.  *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1166 n.11 (11th Cir. 1995) (At its discretion, the Court may take judicial notice of documents filed in other judicial proceedings, because they are public documents.); *In re Delta Resources, Inc.*, 54 F.3d 722, 725 (11th Cir. 1995); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

And, Cunningham was informed on December 8, 2015, per his final request to see a doctor, that he had an appointment with a "free world doctor" in two days.  (*Id.*).

does not amount to deliberate indifference but rather simply to a difference of opinion between Plaintiff and Defendants regarding appropriate course of medical treatment for symptoms of polycystic kidney disease.  A difference of opinion between the prisoner and the prison medical staff as to what treatment is proper is considered a medical judgment call and does not give rise to a claim under § 1983.  *See Harris v. Thigpen*, 941 F.2d 1495, 1504-05 (11th Cir. 1991)(As long as the medical treatment provided is "minimally adequate," a prisoner's preference for a different treatment does not give rise to a constitutional claim.); *see also Adams*, 61 F.3d at 1547 (concluding that the medical provider's "failure to administer stronger medication" to a prisoner who subsequently died was "a medical judgment and, therefore, an inappropriate basis for imposing liability under section 1983"); *Hamm v. DeKalb Cnty.,* 774 F.2d 1567, 1575 (11th Cir. 1985) (evidence showed prisoner received significant medical care in jail and although he may have desired different treatment "the care the jail provided did not amount to deliberate indifference"), *cert.denied*, 475 U.S. 1096, 106 S. Ct. 1492, 89 L. Ed. 2d 894 (1986).

Under these circumstances, the course of treatment undertaken by Defendants did not violate Plaintiff's constitutional rights.  The medical care Cunningham received was not "so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  In light of

the forgoing, the undersigned finds the claims against Defendant Dr. Kouns are due to be dismissed, and summary judgment should be granted in favor of Dr. Kouns.

    3. <u>Claim of Delayed Medical Treatment in February 2016</u> .

Taking Plaintiff's allegations as true, and reading the facts in a light most favorable to Cunningham, the nonmovant, Cunningham has failed to carry his burden of establishing an Eighth Amendment claim against Defendants Nurses Walls, Jackson, and Johnson for denying or delaying him a doctor's visit.

To be successful on his claim against the Nurse Defendants, Cunningham as previously discussed must, and does not, show that the Nurse Defendants were deliberately indifferent to a serious medical need and that the delay in being examined by Dr. Stone worsened his condition or had a detrimental effect. There is no reference in the record, medical or otherwise, that Defendants knew of a substantial risk of harm to Plaintiff and acted to deny Cunningham medical treatment with such knowledge. To the contrary, the record reveals that the Nurse Defendants were aware of the need to manage Cunningham's symptoms, responded to his sick call requests and grievances, and provided adequate medical care, even if it was not the particular treatments desired by Cunningham. Specifically, during this period in question, Cunningham received consistent monitoring of his hypertension, polycystic kidney disease, seizures, and asthma through the

Chronic Disease Clinic (*See* Doc. 44-1 at 61-102); he was examined by the nursing staff following sick call requests (*see Id.* at 75-102); he had his medications managed and changed when deemed appropriate (*Id.* at 83, 97, 102); he received blood work ups (*Id.* at 80), urinalysis testing (*Id.* at 97), abdominal and pelvic ultrasounds (*Id.* at 88, 90), and he was evaluated by the doctor on several occasions (*Id.* at 76, 77, 79, 83). Clearly, Cunningham was not denied adequate medical treatment. At most, Cunningham may have been misinformed of a scheduled appointment, possibly delaying him seeing Dr. Stone at a slightly earlier date.

As to a claim of delay, the record shows Cunningham did not suffer any detrimental effect or worsening of his condition. He was examined by Dr. Stone for complaints of pain on January 26 and February 15, 2016. Cunningham received a full hematology workup and updated ultrasound scans. (*Id.* at 83-84, 88-91). The diagnostic tests showed no identifiable cause for Plaintiff's alleged pain and revealed very little change to the size of his kidneys and the measured cysts from prior scans. (*Id.* at 88-91). Following Dr. Stone's examinations and the conducted tests, Plaintiff's course of treatment was continued without any alterations. Consequently, there is no evidence of record to establish a worsening of Plaintiff's condition due to the delay in February 2016 in being seen by the doctor. It is therefore recommended that summary judgment be granted in favor of Defendants

Stone, Jackson, Johnson, and Walls, and the claims related to Plaintiff's medical treatment in February 2016 be dismissed.

    4.  Claim of Denial of Medical Treatment Since the Filing of this Action.

    Cunningham further claims Defendants failed to refer him back to the urology specialist and failed to prescribe him effective pain medication despite continued complains of pain and urination difficulties. (Doc. 59 at 11). Defendants contend that Cunningham "continues to be seen and monitored by the health care professionals at the Holman Correctional Facility" and "has always been treated within the standard of care of medical providers practicing medicine in the state of Alabama."  (Doc. 44-1 at 9).  Additionally, Defendants present the limitations to treatment of polycystic kidney disease to the management of its symptoms only – which Plaintiff was made aware of in February 2015 when the Health Services Administrator informed him of the prognosis of his medical condition, stating:

> . . . According to your diagnosis, you have polycystic kidney disease.  This condition does not get better and it cannot be fixed.  This condition in combination with your high blood pressure will likely render your kidneys to go into failure. . . .

(Doc. 44-1 at 54).  With these treatment limitations in mind and understanding the natural progression of Plaintiff's illness, the undersigned analyzes Cunningham's claim of denial of medical treatment.

    As discussed *supra*, for medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent,

inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). The crux of Cunningham's claim is a discrepancy as to the course of treatment desired by Cunningham and the care provided by Defendants. No doubt, Cunningham has received continuous blood pressure monitoring, multiple ultrasounds to track the progress of his illness and determine the cause of his complained of pain, and urinalysis tests to identify possible infections. None of these diagnostic procedures revealed an explanation for Plaintiff's pain nor did they evidence a worsening of symptoms to alter the course of treatment planned by the Holman physicians. Additionally, Cunningham has continuously been prescribed Clonidine, Lopressor, Norvasc, and Cozaar to treat his high blood pressure, Hytrim 5m to treat his urination difficulties, Dilantin to control his seizures, and Singular to treat his asthma/allergies. (Doc. 44-1 at 75, 95). The undersigned finds no evidence in the record that Defendants disregarded any known risk to Plaintiff's health. *See Farmer*, 511 U.S. at 837. In fact, the record demonstrates that Defendants viewed Plaintiff's complaints as serious needs and actively investigated the symptoms for which he complained.

The fact that Defendants have not allowed Cunningham to return to a specialist (after all diagnostic tests revealed negative results) is a matter of medical judgment. That Plaintiff disagrees with Defendants' medical judgment and feels he should have been referred to a urologist is

insufficient to support a deliberate indifference claim. *See Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995) (whether defendants "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding" constitutional liability); *Harris*, 941 F.2d at 1505 (explaining that a difference in medical opinion between the prison's medical staff and the inmate about the inmate's course of treatment will not support a claim of cruel and unusual punishment). "When a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation." *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989).   Additionally, there is no evidence before the court that Cunningham has suffered any detrimental effect due to being denied a referral to a specialist. *See Townsend v. Jefferson Cnty.*, 582 F.3d 1252, 1259 (11th Cir. 2009).  Notably, his complaints have not substantially changed since 2014.  Cunningham presents no medical evidence or even an allegation that his condition has actually worsened; he asserts only that he is in pain.  Thus, Cunningham has not carried his burden of proving deliberate indifference to his medical care or any worsening of his medical condition due to a failure to be seen by a specialist.

Cunningham's claim that Defendants' primary and continued prescription for pain medication, Tylenol, was ineffective does not rise to the level needed to effectually be a constitutional violation. "There may be an Eighth Amendment violation when a jury could find that the medication

28

provided to [the prisoner] was so cursory as to amount to no care at all,"
*McElligott v. Foley*, 182 F.3d 1248, 1257 (11th Cir. 1999), but that is not the
case at hand.  The facts of this case are closely akin to those in *Harvey v.*
*Andem*, No. 3:09cv402/WS/CJK, 2011 U.S. Dist. LEXIS 67853, 2011 WL
2532681 (N.D. Fla. May 19, 2011).  In *Harvey*, the plaintiff claimed a
constitutional violation due to ineffective pain medication; after normal x-ray
and MRI results, the doctor prescribed the plaintiff Motrin and would not
order any stronger medication. 2011 U.S. Dist. LEXIS 67853, *67-68.

> Because plaintiff's subjective complaints of the severity of pain
> and need for stronger pain medication were not supported by the
> objective medical findings, [the doctor] did not prescribe stronger
> medication. Plaintiff disagrees with [the doctor's] medical
> judgment, but fails to provide evidence from which a reasonably
> jury could find that [the doctor] grossly misjudged plaintiff's
> condition. Plaintiff's non-medical opinion about the severity of
> his condition is insufficient to raise a genuine dispute on the
> issue. Because the record reveals no genuine dispute as to
> any material fact, and the evidence could not enable a
> reasonable jury to conclude [the doctor] knew of an obvious need
> for stronger pain medication and disregarded that need by
> conduct that is more than gross negligence, plaintiff is not
> entitled to summary judgment. For the same reason, [the doctor]
> is entitled to summary judgment on plaintiff's medical
> deliberate indifference claim.

*Id.*  The difference in the treatment received by Defendants and that desired
by Cunningham appears to be a medical judgment call.  Dr. Newman opined
that Cunningham's pain was not kidney related and in three consultations
never once prescribed or recommended pain medication for Cunningham.
This is further supported by the objective findings of diagnostic imagining
scans and tests (over a three year period) that failed to identify the source of

Cunningham's complained of pain. Thus, the evidentiary record reveals no genuine dispute as to any material fact, and there is no evidence that Defendants knew of any objective need for stronger pain medication and disregarded that need by conduct that is more than gross negligence. *Id.; see also McElligott*, 182 F.3d at 1255.

Considering the totality of the circumstances surrounding the medical treatment that Cunningham received related to his complaints from the first day that he presented with difficulty urinating and pain on his right side on February 20, 2014, to the present date, the Court cannot say that any of the Defendants were deliberately indifferent to his serious medical needs. The record shows that, at all times, Cunningham was promptly treated for his complaints. There is no evidence that Defendants ever knew of an excessive risk to Cunningham's health and disregarded it, nor is there "verifying medical evidence" that any delay in Cunningham's access to medical care has detrimentally effected his medical condition. *Hill*, 40 F.3d at 1188-89. Thus, Cunningham has failed to establish the subjective element of his Eighth Amendment claim, and Defendants are entitled to summary judgment.

## IV.    Notice of Judgment Independent of the Motion.

Rule 56 of the Federal Rules of Civil Procedure permits the court, after it has given notice and a reasonable time to respond, to "consider summary judgment on its own after identifying for the parties material facts that may

not be genuinely in dispute." Fed. R. Civ. P. 56(f)(3). Thus, by filing of this Report and Recommendation, the court **notifies the Plaintiff** of its intention to consider a recommendation to the presiding Chief District Judge that she enter summary judgment, *sua sponte*, in favor of Defendant Gloria McClain on the claims raised against her in this action.

Plaintiff Cunningham has raised an Eighth Amendment claim against Defendant McClain for delaying the recommended cystoscopy for eight months and denying medical treatment during the wait for the cystoscopy, specifically in April 2015. These claims and all allegations made in Cunningham's pleadings (*see* docs. 30, 59) are identical to the claims and allegations made against Defendant Kouns and Hood. Additionally, the record confirms that Nurse McClain immediately responded to the September 17, 2015 grievance filed with her (Doc. 30 at 21) just as the defendants in this action promptly responded to requests made by Cunningham. For the reasons stated in this report, after a review of all the relevant facts, it is recommended that summary judgment be entered on behalf of Defendant McClain and dismissal of all claims against her.

However, Defendant McClain has yet to be served with the complaint and is therefore not a party to this motion for summary judgment. Given that Cunningham presents no additional allegations nor provides any differing facts as to his claims against Defendant McClain as those against Defendants

Kouns and Hood, the court maintains that its findings of facts and conclusions of law regarding the claim presented against Defendants Kouns and Hood would be essentially identical to those of Defendant McClain. Accordingly, Plaintiff Cunningham is hereby put on notice by this report and the analysis of his claims of the court's intention to consider summary judgment in favor of Defendant Gloria McClain.

Accordingly, within the fourteen days provided for filing objections to this report and recommendation, Plaintiff Cunningham shall show cause, in writing, why the court should not enter summary judgment pursuant to Rule 56(f)(3) of the Federal Rules of Civil Procedure in favor of Defendant McClain on Plaintiff's 42 U.S.C. § 1983 claims.  In responding to this notice, Plaintiff should refer to Fed. R. Civ. P. Rule 56, including the following provision:

A party asserting that a fact . . . is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence . . . of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Plaintiff cannot rely only on his unsworn pleadings but must respond to this notice by filing sworn affidavits, depositions, or other materials set forth in Rule 56(c)(1)(A) — or by citing such evidence already of record in this matter — which set forth facts presented in a form

that would be admissible evidence demonstrating that there is a genuine dispute as to a material fact for trial in this case.  If plaintiff fails to file sworn affidavits or other acceptable evidence as set forth in Rule 56 the court will accept the evidence identified above as undisputed, for purposes of evaluating whether the court should grant summary judgment in the defendants' favor. *See* Fed. R. Civ. P. 56(e).  Plaintiff's failure to follow the requirements of Rule 56(c)(1)(A) in opposing the proposed summary judgment could result in a recommendation from the undersigned Magistrate Judge to the presiding Chief District Judge that she enter summary judgment in the favor of the Defendant McClain and enter final judgment in this case without a trial.

## V.   Conclusion.

Plaintiff Cunningham has failed to show an Eighth Amendment constitutional violation on the part of the Defendants Kouns, Hood, Stone, Jackson, Johnson, and Walls.  Based on the foregoing, the undersigned recommends that summary judgment should be **GRANTED** in their favor of and that Plaintiff Cunningham's action against these Defendants be **DISMISSED** with prejudice.  Furthermore, Plaintiff is hereby placed on Notice by the filing of this Report and Recommendation of the **Court's intention to recommend the granting of summary judgment for Defendant Gloria McClain**, who has not been served with this complaint to date.  Plaintiff is afforded the opportunity to include within any objections he

has to this report and recommendation any reasons that should preclude the entry of summary judgment on behalf of Defendant McClain.

Additionally, Plaintiff Cunningham's motion to appoint counsel (Doc. 60) is hereby **DENIED** as moot.[10]

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the

---

[10] Plaintiff's motions relating to the service of Defendant Gloria McCain, Docs. 45, 52, 57, shall remain pending until the time period for the Right to File Objections to this report expires.

objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

DONE and ORDERED this the 20th day of July, 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**